**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Kaylon Sebron BAILEY, Defendant–
Appellant.**

No. 01–6023.

United States Court of Appeals,
Sixth Circuit.

April 23, 2003.

Before BOGGS, SUHRHEINRICH, and SILER, Circuit Judges.

PER CURIAM.

Kaylon Sebron Bailey appeals his conviction for attempting to distribute in excess of five grams of cocaine base, in violation of 21 U.S.C. § 841. Bailey and a co-defendant, Lametris Bush, were arrested on January 4, 2001, and charged with conspiring to distribute cocaine base ("crack"). On January 23, 2001, a federal grand jury returned a three-count indictment against Bailey and Bush. Bailey was charged in two of the counts. Count One charged Bailey with conspiring to distribute fifty grams or more of cocaine base with Bush, in violation of 21 U.S.C. § 846. Count Two charged Bailey with attempting to distribute five grams or more of cocaine base, in violation of 21 U.S.C. § 841(a)(1)

and (b)(1)(B). Bush pled guilty to the charges and Bailey went to trial. After a two-day jury trial, Bailey was convicted of Count Two, acquitted of Count One, and subsequently sentenced to a term of 170 months to be followed by a four-year period of supervised release. Bailey filed a timely notice of appeal on August 10, 2001. We affirm.

## I

On January 4, 2001, Bailey and Bush were arrested at Frank's grocery store in Chattanooga. Tennessee, after Bush attempted to sell crack cocaine to a confidential informant named Terry Heard. Heard, who recently had been arrested for distribution of controlled substances, had cooperated with the police to set up the meeting, recording four staged conversations in which he arranged to purchase two ounces of crack cocaine from Bush. Bush had agreed to meet Heard at Frank's grocery store. Heard was outfitted with a transmitter and provided with "flash money." The plan was to arrest Bush before the transaction was completed, but after confirming that the drugs were present. Approximately ten officers in four different vehicles were part of the stakeout, wearing raid gear, including vests with the word "Police" written on the front and back in large letters.

Heard gave the pre-arranged signal to the officers once he had verified that Bush had the drugs with him, and the officers descended on the parking lot. The officers claim that they announced they were police officers and pulled Bailey out of the car, placing him on the ground, while they attempted to secure Bush who had gone inside the grocery store. Bailey, however, jumped up and ran from the scene. He claims that he ran because he did not know that these were police officers and he thought they were a gang that had come after him. Eventually Bailey was apprehended at a nearby barber shop.

Once arrested, Bailey waived his rights in writing and made various incriminating statements to officers who interviewed him at the police station.[1] Various officers testified at trial that Bailey had told them he worked for Bush, by driving him around, and that Bush was "the man," which the officers interpreted as implying that Bush was in charge and in possession of the drugs. In addition, Bailey allegedly told the officers that he wanted to cooperate and could do so by acting as an informant and arranging crack cocaine deals.

Bush pled guilty to the charges and agreed to cooperate as part of his plea agreement. Bush testified for the government at trial, stating that he had been engaged in drug transactions with Bailey since October 2000, and that it was Bailey who was supplying the drugs, which were obtained from Atlanta, Georgia. Bush also testified regarding the events that led up to the meeting at Frank's grocery store and their subsequent arrest. Bush explained that he got a call from Heard expressing an interest in buying two ounces of cocaine base. Bush then called Bailey to purchase the drugs he would need for the sale. When Bush visited Bailey's residence, he told Bailey that he had a buyer who wanted two ounces of crack later that evening. Bailey told Bush to call him when he needed the drugs. In the meantime, Bush purchased a sixteenth of an ounce of crack. Bush testified that Bailey appeared to have approximately 50 grams of cocaine base on a scale, while

---

1. Bailey denied at trial that he signed the waiver after being arrested, but this is not an issue on appeal.

they were conducting this transaction at his house.

Later on in the day, Bush made a call to Bailey, letting him know that the buyer was ready. Bailey then picked up Bush and drove him to the grocery store, saying that it was on his way to another appointment. Bailey testified on his own behalf at his trial, denying that he had ever supplied Bush with crack, and further stating that he did not do drugs anymore, having learned his lesson from a prior conviction for possession of cocaine (not crack) in Georgia.

Bailey now raises four issues on appeal, all of which he contends require a reversal of his conviction, and in most cases a new trial. Bailey contends that 1) the district court abused its discretion during *voir dire*, by limiting Bailey's questioning of the potential jurors: 2) the government did not present sufficient evidence of Bailey's crime of aiding and abetting an attempted drug offense; 3) the district court plainly erred in allowing Bush to testify with regard to a prior act involving Bailey; and 4) the district court abused its discretion by admitting into evidence the events that led up to Bailey's prior conviction for possession of cocaine in Georgia. We reject these arguments and affirm Bailey's conviction.

## II

### A. Claim Regarding a Limitation of *Voir Dire*

■ Bailey contends that the "trial judge erred by improperly limiting the defense counsel's voir dire." He further submits that this limitation affected the fundamental fairness of the case. However, the transcript of the *voir dire* does not support this contention. After the trial judge asked the defense counsel "to wrap it up," the judge still allowed the defense

to question the jurors as to whether they would be more likely to believe witnesses that work for the government and whether or not the defendant's race would be an issue. Having asked those questions, the following exchange took place:

*Defense Counsel:* Okay. I'm going to ask you one final personal question, real quick, then I'm going to sit down. This is a personal question, and it's an odd question, but it may give me some insight to what you think or what kind of people you are. If I asked you to tell me real quick one person in life that you admire as a hero or someone that you admire, that you look up to, whether it be a political figure or religious figure, someone you know personally, just someone you look up to, just tell me. And it may not be anyone any of us know. I want to ask you who in this day and time or some former person would you consider a hero of yours. And I'm going to just go down the row real quick. I know this is a tough question.

*The Court:* We don't—we're not going to take the time to do that, Mr. Richardson. We've been through—everybody's responded to questions, we're not going to do that one. We don't have the time to do that.

*Defense Counsel:* Okay

*The Court:* I don't think that's particularly an appropriate question. You can ask another question if you want.

*Defense Counsel:* I know that's an unusual question, Judge, but sometimes it gives some, provokes some unusual responses, but that's all I have.

JA at 65–66.

In reviewing the district court's handling of *voir dire*, we must ascertain whether the court abused the broad discretion vested in the court. *United States v. Phibbs*, 999 F.2d 1053, 1071 (6th Cir.1993) (citing

United States v. Blanton, 719 F.2d 815, 822 (6th Cir.1983)). The trial court "retains great latitude in deciding what questions should be asked on *voir dire.*" *Hill v. Brigano*, 199 F.3d 833, 843 (6th Cir. 1999) (quoting *Mu'Min v. Virginia*, 500 U.S. 415, 424, 111 S.Ct. 1899, 114 L.Ed.2d 493 (1991)). So long as the court ensured that the defendant had "a fair trial by a panel of impartial, 'indifferent' jurors," reversal is not mandated. *Irvin v. Dowd*, 366 U.S. 717, 722, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961). *See also Hill*, 199 F.3d at 843.

The relevant inquiry in this case, then, is whether the court's refusal to allow the defense counsel to ask the jurors about their heroes prevented Bailey from uncovering bias in those jurors who sat on his case, and in this case the answer is that it did not. The question proposed by Bailey's counsel did not focus on any potential bias that the jurors might have had. It was entirely unrelated to the facts of the case and appeared to be more of a fishing expedition. Furthermore, the court gave defense counsel the opportunity to ask another, more appropriate, question, but counsel stated that he was done. The minor limitation imposed by the district court in this case was appropriate and was not an abuse of discretion.

### B. Claim Regarding Insufficient Evidence For Conviction

■ The relevant question in assessing a challenge to evidentiary sufficiency is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (emphasis in original). *See also United States v. Sykes*, 292 F.3d 495, 498–99 (6th Cir.), *cert. denied*, —— U.S. ——, 123 S.Ct. 400, 154 L.Ed.2d 322

(2002). "Circumstantial evidence alone may sustain a conviction under this deferential standard of review." *United States v. Adams*, 265 F.3d 420, 423 (6th Cir.2001) (citations omitted).

Bailey contends that the prosecution did not present sufficient evidence to prove beyond a reasonable doubt that he had attempted to aid and abet the distribution of crack under 21 U.S.C. § 841. Bailey relies on *United States v. Pennyman*, 889 F.2d 104, 106 (6th Cir.1989), which lays out the elements that must be proven to convict a person of an "attempt" to commit a drug offense. The government instead analyzes the issue according to *United States v. Johnson*, 127 F.3d 625, 628 (7th Cir. 1997), which lays out the elements to be proven to convict a person of aiding and abetting the distribution of cocaine base. Bailey's mistake is in construing his conviction as an *attempt to aid and abet* the distribution of crack. It is instead a conviction for aiding and abetting an *attempt to distribute* cocaine base. Since Bailey is not arguing here that *Bush's* actions do not constitute an attempt to distribute cocaine base, the relevant question is whether or not the government offered sufficient evidence to prove the elements of aiding and abetting a drug offense.

We have explained that the essential elements of aiding and abetting the crime of possession with the intent to distribute cocaine are: 1) that the defendant knew that the person he or she was aiding and abetting possessed cocaine with the intent to distribute it; and 2) that the defendant assisted in this person's plan to deliver the cocaine. *United States v. Pena*, 983 F.2d 71, 73 (6th Cir.1993). Although *Pena* deals with a situation in which the defendant aided and abetted a completed drug offense, as opposed to an attempted drug offense, the same elements are relevant in this case, as it is not important that Bush

did not succeed in actually distributing the crack. The focus is instead on the behavior of the person who aided and abetted the crime, whether attempted or completed.

The government's case was based generally on three pieces of evidence: Bush's testimony against Bailey, Bailey's statements to the police while in custody, and evidence of prior acts committed by Bailey. Nevertheless, Bush's testimony alone is enough to satisfy the standard under *Jackson*. According to Bush's testimony, Bailey sold Bush the drugs that were to be sold to Heard, and drove Bush to the grocery store where he was to meet Heard for the sale. This testimony, if believed, constitutes sufficient evidence for a rational trier of fact to find beyond a reasonable doubt the essential elements of the crime of aiding and abetting. Furthermore, Bailey's statements to the police that he was there to drive Bush around from drug sale to drug sale, in combination with the physical evidence that he was driving the car, supports such a finding, as did the evidence presented with respect to Bailey's prior acts.

Bailey contends that Bush's testimony is not credible, since he admitted that he was testifying in order to fulfill the terms of his plea agreement.[2] However, determining the credibility of witnesses is a task for the jury, not this court. *See United States v. Hilliard,* 11 F.3d 618, 620 (6th Cir.1993) (noting that this court does not weigh evidence, make credibility determinations, or substitute its judgment for that of the jury). The jury accepted Bush's version of events, and we must "refrain from independently judging the credibility of witnesses or [the] weight of the evidence."

*United States v. Walls,* 293 F.3d 959, 967 (6th Cir.), *cert. denied,* —— U.S. ——, 123 S.Ct. 543, 154 L.Ed.2d 431 (2002) and *Stephens v. United States,* —— U.S. ——, 123 S.Ct. 454, 154 L.Ed.2d 346 (2002).

■ Bailey also contends that Bush's testimony reflected that Bailey was actually going to meet someone else, and that giving a ride to Bush was incidental and done only as a matter of convenience. But, whether or not this is true is immaterial to the issue at hand. In other words, it is enough that Bailey drove Bush to the grocery store for the purpose of facilitating the drug deal, it is not necessary that this was Bailey's only motivation, or even that it was his primary motivation. All that is necessary is that he be found to have known that Bush was in possession of the drugs to be sold and that he assisted Bush in attempting to sell those drugs. Furthermore, as stated earlier, when considering the sufficiency of the evidence at trial we must consider all of the evidence proffered at trial in a light most favorable to the prosecution. Viewed from this perspective, the government succeeded in presenting sufficient evidence to prove these two elements.

### C. Claim Regarding Evidence of Prior Bad Act

■ At the final pretrial conference conducted in this case, the trial court ruled that the government would be entitled to introduce testimony at trial with respect to an event that occurred in November 2000, in which Bailey had been pulled over by a police officer and in the process had run from the officer, gotten into a struggle in the woods near the side of the road, and had during the scuffle dropped at least

---

**2.** Bailey claims that "Bush admitted, upon cross-examination, that he added to his testimony or embellished his testimony in this regard in order to fulfill what he thought was his obligation to the government in order to earn his sentence reduction." Appellant's Brief at 18. However, Bush's testimony does not support this contention.

three ounces of cocaine powder, some cash, and his cell phone. Bailey now appeals this ruling.

At trial, Bush testified that in November or early December of 2000, Bailey had told Bush that he'd gotten into a scuffle with a police officer the night before and had left behind some cocaine, cash, and his cell phone. Bush further testified that Bailey took him and another associate, Tyrone Hill, in a white car to where the scuffle with the officer had taken place in order to find the missing items. Bush testified that they found some of the money, the drugs, and an ammunition magazine for a police firearm, but were unable to locate the cell phone.

Chattanooga Police Officer Grover Wilson corroborated Bush's testimony. Officer Wilson testified that he had pulled over a white vehicle at approximately ten o'clock in the evening on November 21, 2000. The black male who was driving the car fled on foot from the officer. Officer Wilson chased the man, caught up with him, and fought with him. Eventually the suspect managed to get away, but the officer lost his glasses and a magazine clip during the scuffle. When Officer Wilson returned to the scene, he found his glasses and a cell phone, which was later identified as Bailey's, but nothing else.

Tyrone Hill, who was, according to Bush's testimony, with Bush and Bailey when they searched for Bailey's personal items, testified for the defense and denied ever having gone with Bailey or Bush to look for money or drugs. Furthermore, he denied ever having received cocaine from Bailey or from Bush.

Bailey testified on his own behalf. Although he admitted having known Bush for two or three years, he denied knowing that Bush sold drugs, denied having sold drugs to Bush, and denied having ever gone with Bush and Hill to look for drugs or money. Bailey admitted that the cell phone found was his, but he remembered leaving it in his "friend's car." However, the officer had testified that he had found it in the woods.

When the government's lawyer raised the issue of the admissibility of testimony about this prior act during the pretrial hearing, he relied on Rule 404(b) of the Federal Rules of Evidence, which deals with the admissibility of prior crimes, wrongs, or acts being used as character evidence. However, the court ruled that this testimony did not fall under Rule 404(b), but that it was admissible as evidence of the conspiracy alleged in Count One, since the event occurred during the course of the alleged conspiracy between Bailey and Bush.[3] While certain evidence of prior acts can fall outside of Rule 404(b)'s prohibitory scope, the district court's analysis here is not entirely persuasive. But even if the district court's assessment was incorrect, this evidence is admissible pursuant to Rule 404(b).

We have concluded that Rule 404(b)'s prohibition is not applicable when the evidence proffered is considered to be "background evidence," or *res gestae*, which "constitutes 'a continuing pattern of illegal activity.'" *United States v. Hardy*, 228 F.3d 745, 749 (6th Cir.2000) (quoting *United States v. Buchanan*, 213 F.3d 302 (6th Cir.2000)). Although such a statement might appear quite broad, we have put

---

3. Bush testified at trial that he and Bailey only started conducting transactions involving drugs until October 2000, which is several months after July 2000, the commencement date identified in Bailey's indictment. However, whether the conspiracy began in July 2000, or in October 2000, is irrelevant here, since the act under discussion occurred in November 2000, after either date.

stringent requirements on background evidence, holding that the "background circumstances exception" to the general exclusion of "other acts" coming under Rule 404(b) applies only if the evidence "consists of those other acts that are inextricably intertwined with the charged offense or those acts, the telling of which is necessary to complete the story of the charged offense." *Hardy*, 228 F.3d at 748. We have further stated that "[p]roper background evidence has a causal, temporal or spatial connection with the charged offense." *Ibid.* The basic distinction is that such events are part of the very act charged and are being used to prove a material fact other than the defendant's propensity to commit the alleged crime.

In the present case, the event at issue unquestionably occurred during the course of the conspiracy and served as evidence of the fact that Bailey was still involved with drugs during the conspiracy, which is a material fact that was at issue during the trial. Furthermore, the fact that Bailey asked for Bush's help in finding the cocaine is relevant to the claim that the two were co-conspirators in dealing drugs. Therefore, Bush's testimony can be viewed as "background" evidence, which is admissible irrespective of Rule 404(b). *See, e.g., United States v. Austin*, Nos. 97–4197, 97–4239, 97–4386, 97–4408, 98–3105, 2000 WL 32017, at *9 (6th Cir. Jan.4, 2000) (citing *United States v. Concepcion*, 983 F.2d 369, 392 (2d Cir.1992), for the proposition that an act alleged to have been done in furtherance of an alleged conspiracy does not fall within the meaning of Rule 404(b)).

■ On the other hand, the government noted at the pretrial conference that it was interested in using this evidence to demonstrate Bailey's propensity for running away from the police, which directly implicates Rule 404(b), as it was being proffered for the purpose of demonstrating Bailey's "criminal disposition" and for conduct in conformity with such a disposition, which is exactly the type of evidence prohibited by Rule 404(b). *See, e.g., United States v. Ushery*, 968 F.2d 575, 580 (6th Cir.1992) (noting that Rule 404(b) bars evidence of prior acts that are offered to "show criminal disposition or propensity."). Therefore, we would prefer not to rely on the argument that this evidence is *res gestae*, and instead determine its admissibility under Rule 404(b).

Rule 404(b) does permit the use of prior acts in proving "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice...." Fed. R. Evid. 404(b). In this case, the evidence was admissible for the purpose of proving intent and an absence of mistake, since Bailey claimed that he had no idea that Bush intended to sell drugs to Heard and only ran from the police because he didn't realize they were the police. The government offered this incident, including the fact that Bailey fled from the police prior to his arrest in Georgia, to contradict Bailey's assertion by demonstrating that Bush had run from the police before, when he was aware of the fact that the police were after him.

Since the district court found that this prior act did not come under Rule 404(b), it did not analyze the evidence according to the three-step process this court has set forth for determining the admissibility of evidence of other acts under Rule 404(b): 1) The district court must decide whether there is sufficient evidence that the act in question actually occurred; 2) the district court must decide whether the evidence of the other act is probative of a material issue other than character; and 3) the district court must decide whether the pro-

bative value of the evidence is substantially outweighed by its potential prejudicial effect. *United States v. Haywood*, 280 F.3d 715, 719–20 (6th Cir.2002); *United States v. Gessa*, 971 F.2d 1257, 1261–62 (6th Cir. 1992) (*en banc* ).

Although it is clearly preferable for the district court to have undertaken this analysis, Bush did not object to the court's ruling and thus we review the district court's decision for plain error only.[4] *United States v. Brooks*, No. 98–1207, 2000 WL 420682, at *3 (6th Cir. Apr.12, 2000) (citing *United States v. Samour*, 9 F.3d 531, 537 (6th Cir.1993). Plain errors are "those harmful ones that are so rank that they should have been apparent to the trial judge without objection, or that strike at the fundamental fairness, honesty, or public reputation of the trial." *Samour*, 9 F.3d at 537 (quoting *United States v. Causey*, 834 F.2d 1277, 1280 (6th Cir.1987)).

It is not apparent that the district court committed plain error in this case. First, there was sufficient evidence that the act in question actually occurred. Although Bailey and Hill testified that the events described by Bush never took place, Bush's testimony was entirely corroborated by Officer Wilson's testimony and substantiated by the fact that Bailey's cell phone was found at the scene. Second, as noted above, the evidence was admissible for the purpose of proving intent and an absence of mistake. Third, the evidence was highly probative since it occurred during the course of the alleged conspiracy, served to demonstrate that Bailey was still involved with drugs during the relevant time period, thereby providing evidence of Bailey's intent, illustrated the relationship between Bailey and Bush, and finally, served to prove an absence of mistake. In sum, the district court did not commit plain error in admitting evidence of this event, and although a limiting instruction to the jury as to the purpose of introducing this evidence would have been useful, the information is not substantially prejudicial since it does not involve an incident in which Bailey was actually selling, or conspiring to sell, drugs.

### D. Claim Regarding Introduction of Prior Conviction

■ Bailey also contends that the district court abused its discretion in admitting into evidence under Fed.R.Evid. 404(b) the events that led up to his prior conviction for possession of cocaine in Georgia. Specifically, Bailey argues that the probative value of this evidence was substantially outweighed by its prejudicial effect.

The government raised the admission of this evidence during the final pre-trial conference. Bailey agreed that if he took the stand, the conviction would be admissible to impeach him, but the government wanted to present evidence of Bailey's flight from the police officer in order to demonstrate a pattern of behavior. The court tentatively agreed to admit this evidence under Fed.R.Evid. 404(b).

In his opening statement at trial, the defense counsel mentioned the events leading up to Bailey's arrest in Georgia, includ-

---

4. We take note of the fact that one of the important distinctions between admitting as permitted by Rule 404(b) and admitting it as background evidence is that the text of Rule 404(b) requires the government to provide "reasonable notice" of its intention to use such evidence at trial. Fed.R.Evid. 404(b). In this case the government did give such notice and thus, even if the evidence at issue comes under Rule 404(b), this notice requirement will not bar its admission. Given the sometimes difficult determinations that are required in this area, giving "reasonable notice" may be a prudent choice for the prosecution in cases such as this one.

ing his flight from the police. However, before Jonathan Parker, the Georgia State Patrol Officer who arrested him, testified. Bailey's counsel objected again to the admission of this information. Counsel stated that he didn't "object to the fact coming out that Bailey was arrested and subsequently pled guilty," but instead objected to testimony "about how Bailey ran and was swinging under the interstate bridge. I think that's prejudicial. I don't think any of that should come in. I don't see what it has to do with a conspiracy three years later to distribute cocaine." JA at 177. In fact, the events leading up to the arrest of Bailey in Georgia occurred on July 27, 1999, just over 17 months before Bailey's arrest for the offense in this case. The district court ruled that the information was admissible to demonstrate intent and that its probative value outweighed any potential prejudicial impact. Defense counsel requested a limiting instruction, which the judge gave after officer Parker's testimony.

Officer Parker testified that he witnessed a traffic accident in which Bailey ran a stop sign and hit two other cars. Bailey immediately left the car and fled from the scene on foot, ignoring the officer's commands to stop. At the time of the accident, cocaine powder was all over the front seat of the vehicle, on the steering wheel, and on the inside of the door. The officer ran after Bailey, eventually catching him. Bailey, once apprehended, admitted that the powdery substance was cocaine. The police were able to recover 16.2 grams of cocaine.

Once again, we look to the three-step process outlined in *Haywood*, 280 F.3d at 719–20, in reviewing the admissibility of prior acts under Rule 404(b). First, it must be determined whether there is sufficient evidence that the prior act occurred. Second, a legal determination must be made as to whether the "other act" allegedly committed by the defendant was admissible as evidence of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Third, a determination must be made as to whether the "other acts" evidence is more unfairly prejudicial than probative. The second and third steps are reviewed for an abuse of discretion. *Id.* at 720.

First, Bailey does not suggest that the events testified to by Parker did not occur. Second, the government here contends that Bailey's flight from the officer in Georgia and possession of cocaine in the car is evidence of his intent, since he exhibited similar conduct in this case, which is relevant since both of Bailey's charged offenses require specific intent. Third, the limiting instructions given by the court with regard to the use of this evidence minimized any potential prejudicial impact. The district court did not err in permitting the use of this evidence.

### III

For the reasons given above, we AFFIRM Bailey's conviction.