**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Shawn M. RICE, Defendant–Appellant.**

**No. 02–5674.**

United States Court of Appeals,
Sixth Circuit.

Feb. 20, 2004.

Charles P. Wisdom, Jr., Asst. U.S. Attorney, John Patrick Grant, Asst. U.S. Attorney, U.S. Attorney's Office, Lexington, KY, Robert K. McBride, Asst. U.S. Attorney, U.S. Attorney's Office, Covington, KY, for Plaintiff–Appellee.

Leigh F. Erbe, Sr., Louisville, KY, Shawn M. Rice, pro se, Manchester, KY, for Defendant–Appellant.

Before BOGGS, Chief Judge; and BATCHELDER and SUTTON, Circuit Judges.

PER CURIAM.

Shawn Rice appeals from his conviction on five counts of distributing cocaine base and cocaine hydrochloride. 21 U.S.C. § 841(a)(1). Mr. Rice's appellate counsel challenges two evidentiary rulings of the district court. He argues that the admission of drug paraphernalia found in an apartment that Rice shared with his mother violated Federal Rule of Evidence 404(b), and that a statement Rice made (after warnings) to officers who were searching the apartment should have been excluded as involuntary.

Rice has also filed a *pro se* supplemental brief, by leave of this court. In it, he seeks dismissal of the indictment against him on the ground that a police witness misrepresented evidence to the grand jury. He also challenges the truthfulness of the affidavit that the police used to obtain a search warrant for his mother's apartment. None of these arguments presents a sufficient basis for reversal, and we therefore affirm Rice's convictions.

I

The principal evidence against Rice came from three controlled buys of cocaine carried out by an informant named Foedis Beal, who worked with police and FBI investigators in Covington, Kentucky. The buys followed typical police procedure. Law enforcement personnel monitored the phone calls Beal made to suspected drug dealers to set up the buys. They searched him, supplied him with money, and gave him a body recorder and transmitter to

wear. The officers then listened in on the buys from a surveillance car parked several blocks away. When Beal returned, they searched him again and took possession of the evidence.

Beal knew Rice from childhood. He testified at trial that he purchased cocaine from Rice in three controlled buys. He returned from each buy with cocaine that he gave to his police handlers. Covington police officer Ted Edgington and FBI agent Jeffrey Smith monitored these buys and testified at trial to the contents of the resulting tape recordings. The recordings were also played for the jury. Officer Edgington. who had known Rice since 1994, was able to verify Beal's testimony that the other voice on the recordings was Rice's.

In the recordings, Beal met with the person whom he and Edgington identified as Rice, counted money, and bought drugs from him. At one point Beal said that he wanted to buy "an eight" from Rice. Beal and Edgington further testified that during one of the buys. Rice temporarily left Beal in order to get the drugs. Beal stated on the recording that Rice went to an apartment in the Jacob Price Homes, a housing project in east Covington. He saw Rice walk up to the Price Homes, but did not see him enter a particular apartment. Rice returned and sold Beal cocaine. (At trial, Beal explained that he knew that Rice's mother lived in the Price Homes, and that Rice kept drugs in his mother's apartment, because her apartment was two doors down from Beal's own mother.)

Police arrested Rice in July 2001, roughly six months after the controlled buys from Beal. They began by reading him his *Miranda* rights. Rice said he understood his rights. He told the officers he had not been involved in drugs for two years. The officers then told Rice that they were going to visit his mother's apartment. Rice

became nervous and told them there was no reason to go there.

Officers went to the Jacob Price Homes and encountered Rice's mother in her apartment. They explained that Rice had been arrested and that they were investigating his possible involvement in drugs. Rice's mother consented to a search of her apartment. The police found a set of scales in one room, and found a locked Brinks safe in a closet in one of the bedrooms. (The bedroom belonged to Rice's daughters.) The officers decided to seek a search warrant for the apartment, including the safe.

The warrant came through quickly, and police began to execute it at the apartment roughly two and a quarter hours after Rice had been given *Miranda* warnings and waived his rights. During this renewed search of the apartment, the police found Ziploc plastic bags and bottles of Inositol, a commercially available sugar often used to cut cocaine. Rice telephoned his mother during the search. One of the officers spoke to Rice on the phone and asked him how to open the safe. Rice said that he had given the key to his brother. The police eventually obtained the key from Rice's brother, but it did not open the safe. In the end, the officers had to cut the safe open. Inside were cocaine residue. $6,900 in cash, a GNC (health store) Gold Card registered to Shawn Rice, and scraps of paper with phone numbers.

The government offered all of the seized evidence at Rice's trial. Rice moved to suppress it as impermissible evidence of "other acts" under Fed.R.Evid. 404(b). He also moved to exclude his statements to the police about the safe during the search of the apartment, on the ground that his waiver of *Miranda* rights had become ineffective with the passage of time. The district court denied both mo-

tions. Concerning the evidence from the safe and the apartment, it reasoned:

> I do not believe it is 404(b) evidence. I believe ... this is an attempt to admit items that are consistent with the drug trade. And I don't see anything 404(b) about it.

Rice's trial counsel challenged Beal's credibility. He elicited testimony that the police stopped using Beal as an informant a few months after the controlled buys from Rice, because Beal was engaging in unauthorized drug transactions. In Officer Edgington's words, Beal "was not as trustworthy as we had hoped for." Rice also offered the testimony of Ronald Burton, a cousin of Beal. Burton testified that Beal was known to be untrustworthy. He reported that Beal had said he was working with the police to avoid punishment for his own drug crimes and that he would identify anyone he thought his police handlers wanted him to name.

The jury returned a guilty verdict on all five counts. Rice timely appealed the two evidentiary issues he had previously raised. He later filed a *pro se* supplemental brief, by leave of this court, raising further issues.

## II

### A

Rice's only relatively substantial argument for reversal concerns the admission of the safe's contents and the other evidence from his mother's apartment. The cocaine residue, phone numbers and drug paraphernalia might be taken to suggest that Rice had engaged in other illegal drug sales besides the ones that were charged against him. Rice argues that the items should have been excluded as improper evidence of "other acts" under Fed.R.Evid. 404(b).

The district court did not conduct a Rule 404(b) analysis. Instead, it held the evidence admissible under the "background evidence" or *res gestae* exception to Rule 404(b)'s limitations. To fall within this exception, evidence must "consis[t] of those other acts that are inextricably intertwined with the charged offense or those acts, the telling of which is necessary to complete the story of the charged offense." *United States v. Hardy*, 228 F.3d 745, 748 (6th Cir.2000). "Proper background evidence has a causal, temporal, or spatial connection with the charged offense." *Ibid.*

We have most often applied this exception in conspiracy cases. Thus, in *United States v. Buchanan*, 213 F.3d 302 (6th Cir.2000), where the defendant was charged with participation in a drug conspiracy stretching from 1990 to 1997, we admitted evidence that the defendant had sold drugs to an informant in 1994 and that police had seized drugs from him in 1990. Rule 404(b) did not apply because the evidence showed "a continuing pattern" of illegal activity associated with the conspiracy.[1] In *Hardy*, by contrast, we held that drug transactions carried out by the defendant and an alleged co-conspirator six years before the charged conspiracy began could not be admitted as background evidence. Such evidence lacked a close enough connection to the charged events. 228 F.3d at 749–751.

 We need not decide whether the district court abused its discretion by holding the evidence introduced against Rice

---

1. *See also United States v. Bailey*, 61 Fed. Appx. 233, 240 (6th Cir.2003) (per curiam) (unpublished opinion) (holding that the fact that defendant ran away from police during the time of the charged conspiracy, dropping some cocaine that he was carrying, "c[ould] be viewed as background evidence" of conspiracy rather than Rule 404(b) evidence, depending on the theory under which the prosecution sought to admit it).

admissible as background evidence, or whether it was admissible under another theory.[2] Even if the evidence was inadmissible under Rule 404(b). any error was harmless. The evidence from the controlled buys was sufficiently powerful that we can say with confidence that the jury's verdict "was not substantially swayed" by the supposed error. *United States v. Haywood,* 280 F.3d 715 (6th Cir.2002). In so holding, we are aware that Rice's trial counsel brought forth relevant evidence questioning Beal's credibility. We would not hold harmless a supposed error in the admission of the drug paraphernalia from the apartment if excluding the paraphernalia would leave the government only with Beal's say-so. But that was not the case here. Beal returned from each controlled buy with cocaine that was entered into evidence. The transactions he carried out were captured on tape and played for the jury. Officer Edgington independently verified that the man who could be heard selling drugs to Beal was Rice. Because Rice's defense offered no meaningful challenge to this evidence, any error in the district court's ruling on background evidence was harmless.

### B

■ The district court found that Rice's statement to the police about how to open the safe was voluntarily made. We review that determination only for clear error. *United States v. Calhoun,* 49 F.3d 231, 234 (6th Cir.1995). Roughly two and a quarter hours had elapsed between when Rice re-

ceived *Miranda* warnings (and waived his rights), and when he told the officers about the safe. Courts have regularly held that the passage of time equal to or greater than this is insufficient to render statements involuntary. *See, e.g., United States v. Frankson,* 83 F.3d 79, 83 (4th Cir.1996) (two and one-half hours between warnings and inculpatory statement); *United States v. Boyd,* 180 F.3d 967, 976 (8th Cir.1999) (two hours); *United States v. Alvarez,* 142 F.3d 1243, 1248 (10th Cir. 1998) ("under two and a half hours"); *Jarrell v. Balkcom,* 735 F.2d 1242, 1253–54 (11th Cir.1984) (approximately three hours). In addition. Rice has failed to present any affirmative evidence suggesting coercion. There was no clear error.

### III

### A

In his supplemental brief, Rice argues that the indictment against him must be dismissed because the prosecutor misled the grand jury. He contends that the prosecutor improperly allowed one of the agents who oversaw Beal's controlled buys to testify in a way that suggested the agent had watched Beal's interactions himself, while in fact he had only listened in from a surveillance car.

■ We doubt that this testimony created any confusion in minds of the grand jurors, but Rice's claim lacks legal merit in any event. It is squarely controlled by

---

2. We note, however, that the arguments for admitting the seized items are quite plausible. The background evidence exception requires a close "causal, temporal, *or* spatial connection" between the evidence and the charged offense. *Hardy,* 228 F.3d at 748 (emphasis added). The cocaine transactions described by Beal had a clear causal and spatial connection to Rice's mother's apartment and the drug paraphernalia in it. Admitting the seized evidence tended to show that, as Beal

claimed, Rice fetched drugs from his mother's apartment in the Jacob Price Homes and sold them to Beal. It thereby "complet[ed]" the story of the charged offense." *Ibid.* While Rice understandably emphasizes the lag of six months between the drug sales to Beal and the search of the apartment, that argument only shows a lack of temporal connection, and so is not necessarily decisive on the question of whether the evidence qualified as background evidence.

*United States v. Nembhard,* 676 F.2d 193 (6th Cir.1982), where we rejected the position "that a court's supervisory powers to dismiss an indictment could be utilized where improper and misleading hearsay testimony was used to procure the indictment." *Id.* at 199. Instead, we held that an indictment could be dismissed because of grand jury misconduct only when "the government misconduct is widespread or extraordinarily serious." *Id.* at 200. The conduct Rice alleges falls well short of that strict standard, as the facts of *Nembhard* illustrate. There, the district court had dismissed the indictment against a drug defendant because an officer had repeatedly testified to the grand jury about what (in his words) "we" had observed the defendants doing in an airport terminal, when the observations he reported were really made by other agents, and thus were undisclosed hearsay. *Ibid.* We reversed, holding that this was not the sort of extraordinary misconduct that would justify dismissal. *Ibid.* The same result follows here, especially since Rice has failed to offer evidence showing that the prosecutor knew of the witness's supposed embellishments before the grand jury.

**B**

Finally, Rice challenges the truthfulness of the affidavit that the police used to get a warrant to search his mother's residence and the safe. The proper time and place to raise such arguments is an evidentiary hearing in the trial court pursuant to *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). Rice requested no such hearing. We accordingly review his *Franks* claim only for plain error.[3] *United States v. Edwards,* 994 F.2d 417, 424–25 (8th Cir.1993). Rice alleges that the warrant (1) described Beal as a reliable and trustworthy informant, and (2) stated that Rice went to the apartment of his mother to get the drugs he sold Beal. Rice argues that these statements were recklessly and materially misleading because, at the time the warrant was prepared, the police knew that Beal was *not* a reliable informant (indeed, they had stopped using him due to doubts about his trustworthiness), and because the warrant did not disclose that neither Beal nor the officers actually saw Rice enter her mother's apartment.

██ Under plain error review, we cannot grant relief unless there is (1) an error of law that is (2) plain and (3) affects substantial rights. *United States v. Cotton,* 535 U.S. 625, 631, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002). And there is a further hurdle: "[A]n appellate court may . . . exercise its discretion to notice a forfeited error . . . only if . . . the error seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *Ibid.* We hold that Rice's *Franks* claim does not satisfy this final requirement. Accordingly, we need not decide whether it satisfies any of the other components of the plain-error inquiry.

*Franks* requires the court to "strike from the warrant affidavit statements that the defendant can prove by a preponderance of the evidence to be both (a) materially false and (b) made with reckless or intentional disregard for their falsity." *United States v. Elkins,* 300 F.3d 638, 649 (6th Cir.2002). As Rice describes it, the affidavit simply stated that Rice got cocaine from his mother's apartment, without making clear how the police had concluded

---

**3.** We would normally be reluctant to review the claim at all, since Rice has failed to enclose a copy of the warrant affidavit or even to quote the salient parts of it. However, the government has chosen to forego filing a response to Rice's supplemental brief. We treat this, for present purposes, as a concession of the truth of Rice's assertions about the affidavit's contents.

this. They had in fact learned it from Beal, who had seen Rice enter the Jacob Price Homes to get cocaine, and who knew that Rice's mother's apartment was near his own mother's apartment in the Price Homes. And the police did not just have Beal's word for it: they possessed recordings of Beal engaging in drug buys. These recordings significantly corroborated Beal's account of his interactions with Rice. Moreover, quite apart from the warrant, the police were independently entitled to search Rice's mother's apartment for evidence, pursuant to her valid consent. Their searching turned up several items that were suggestive of drug activity, including scales, baggies, and bottles of Inositol.

Thus, even if *Franks* would require a court to remove the reference in the affidavit to Beal as a "reliable" informant, the police were still entitled to search the apartment, and would thereby have been able to obtain sufficient evidence to secure a valid warrant to search the safe. Accordingly, we hold that any *Franks* defect in the warrant affidavit as filed does not seriously affect the fairness, integrity, or public reputation of judicial proceedings. Thus Rice is not entitled to relief under plain error review.

## IV

For the foregoing reasons. Rice's convictions are AFFIRMED.