RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0203P (6th Cir.)
File Name: 02a0203p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA,
　　　　　*Plaintiff-Appellee,*

　　　　　*v.*

FRANKLIN WALLS (00-5867);
JACKIE PHILLIP STEPHENS
(00-5868),
　　　　　*Defendants-Appellants.*

Nos. 00-5867/5868

Appeal from the United States District Court
for the Eastern District of Tennessee at Chattanooga.
No. 99-00102—R. Allan Edgar, Chief District Judge.

Argued: April 30, 2002

Decided and Filed: June 12, 2002

Before: GUY and BATCHELDER, Circuit Judges;
WALTER, District Judge[*]

_____

[*]The Honorable Donald E. Walter, United States District Judge for the Western District of Louisiana, sitting by designation.

1

vindictiveness," which would require the government to disprove it or justify the challenged action. *Bragan v. Poindexter*, 249 F.3d 476, 482 (6th Cir.), *cert. denied*, 122 S. Ct. 411 (2001) (citing *United States v. Andrews*, 633 F.2d 449, 453-56 (6th Cir. 1980)). When the pretrial addition of more serious charges results merely from the failure of the plea bargaining process, it is not vindictive prosecution. *See United States v. Suarez*, 263 F.3d 468, 479 (6th Cir.), *cert. denied*, 122 S. Ct. 1547, 2002 WL 549370 (U.S. April 15, 2002); *Wade*, 266 F.3d at 584-85 (superceding indictment not vindictive); *Wells*, 211 F.3d at 1001-02 (superceding indictment not vindictive). Stephens has not demonstrated that plain error resulted from the decision to charge him with violating § 924(c)(1).

**AFFIRMED.**

---

## COUNSEL

**ARGUED:** Russell L. Leonard, Winchester, Tennessee, R. Dee Hobbs, BELL & HOBBS, Chattanooga, Tennessee, for Appellants. Gregg L. Sullivan, ASSISTANT UNITED STATES ATTORNEY, Chattanooga, Tennessee, for Appellee. **ON BRIEF:** Russell L. Leonard, Winchester, Tennessee, R. Dee Hobbs, BELL & HOBBS, Chattanooga, Tennessee, for Appellants. Gregg L. Sullivan, ASSISTANT UNITED STATES ATTORNEY, Chattanooga, Tennessee, for Appellee.

---

## OPINION

---

RALPH B. GUY, JR., Circuit Judge. Defendants, Franklin Walls and Jackie Phillip Stephens, were tried together and convicted of conspiracy to manufacture methamphetamine and various other counts of manufacturing, attempting to manufacture, and possessing chemicals and equipment used to manufacture methamphetamine, in violation of 21 U.S.C. §§ 846, 841(a)(1) and 843(a)(6). Stephens was also convicted of carrying a firearm during and in relation to a drug trafficking offense in violation of 18 U.S.C. § 924(c)(1). On appeal, Walls argues that the district court erred by denying both his motion for severance and his motion for judgment of acquittal on several of the charges. The only conviction Stephens challenges is his conviction under § 924(c)(1). Attacking his sentence, Stephens argues that the district court should have granted him a downward departure due to the disparity in sentencing between him and a cooperating coconspirator. Taking a different tack, Stephens contends that the disparity in sentencing resulted in part from prosecutorial misconduct in the charging decision. After review of the record and the arguments presented on appeal, we affirm.

It is abundantly clear from the sentencing transcript in this case that the district court recognized its discretion to consider disparity as a basis for departure, but concluded that departure was not warranted.  The district court rejected the argument that the disparities were unjustified, noting the difference between finding firearms in a dresser drawer and carrying a loaded firearm during the high-speed chase involving the police.  In addition, the district court explained that Tucker's cooperation was an appropriate basis for the difference in sentences.  Tucker received not only an adjustment for acceptance of responsibility, but also a § 5K1.1 departure for his substantial assistance.  Because the district court properly recognized its authority, we may not review the decision not to depart downward.

**D.   Prosecutorial Misconduct**

In a last-ditch attack on his conviction under § 924(c)(1), Stephens asserts that the addition of the firearm charge in the superceding indictment was the result of vindictive prosecution.  The original indictment charged Stephens, Walls, and Tucker with one count of conspiracy to manufacture methamphetamine.  The superceding indictment, returned after Tucker had agreed to cooperate, added Magnum and charged them all with an expanded conspiracy as well as a number of other drug charges.  Stephens challenges the addition of the firearm charge coupled with the decision not to charge Tucker with a firearm offense as a vindictive decision to punish his assertion of his right to trial and refusal to plead guilty.  Because this claim was not raised below, our review is for plain error.  *United States v. Wade*, 266 F.3d 574, 584 (6th Cir. 2001), *cert. denied*, 122 S. Ct. 1381 (2002).

To establish vindictive prosecution, Stephens must prove that the prosecutor had some "stake" in deterring the exercise of his right to trial, and that the prosecutor's conduct was unreasonable.  *See United States v. Wells*, 211 F.3d 988, 1002 (6th Cir. 2000); *United States v. Branham*, 97 F.3d 835, 849-50 (6th Cir. 1996).  Stephens has not attempted to make this showing and cannot demonstrate a "realistic likelihood of

## I.

The 19-count superceding indictment charged that Stephens and Walls, along with Kenny Tucker and Joe Magnum, conspired to manufacture methamphetamine between August 1997 and September 1999.  Tucker and Magnum pleaded guilty and testified at the joint trial of Stephens and Walls.  Apart from the conspiracy charge, Stephens and Walls were charged jointly in counts 16 and 17 with manufacturing methamphetamine and possessing chemicals and equipment used in the manufacture of methamphetamine on September 30, 1999.  Stephens was charged separately in counts 5, 6, 12, 13, 14, and 15 with manufacturing, attempting to manufacture, and possessing chemicals and equipment used to manufacture methamphetamine on June 3, 1998, August 3, 1999, and August 10, 1999.  Stephens was also charged in count 7 with carrying a firearm during and in relation to a drug trafficking offense on June 3, 1998.  Finally, Walls was charged separately in counts 18 and 19 with attempting to manufacture and possessing chemicals and equipment used to manufacture methamphetamine on September 30, 1999.  Stephens and Walls were convicted of all charges.[1]

The evidence at trial established that Stephens knew how to and regularly cooked methamphetamine during the period relevant to the charged conspiracy.  The first witness, Anne Brooks, had been a regular methamphetamine user.  When she went to purchase methamphetamine from Gary Sanson during the summer of 1998, he directed her to get it from Stephens.  Over the next year, Brooks got methamphetamine from Stephens between ten and twenty times.  Brooks let Stephens cook methamphetamine at her house twice and watched him cook it somewhere else another time.

April Kirk, age 18, testified that she had used methamphetamine every day for about two years and was still

---

[1]The government dismissed count 19 before sentencing.

using at the time of trial. Kirk lived with Stephens for about a year and he provided her with methamphetamine. She helped get supplies such as acetone, coffee filters, Coleman fuel, and Red Devil lye, which were needed to cook methamphetamine. Kirk estimated that Stephens cooked methamphetamine once or twice a month. Kirk explained that Stephens, Tucker, Sanson, Perry Colby, and Ken Stephens went in together on the chemicals used to make methamphetamine and helped each other cook it. Kirk also got methamphetamine from Tucker, who grew up in the same household as Stephens. Stephens and Kirk stayed with Tucker at times and had been living at Tucker's house for a few weeks when they were arrested on September 30, 1999. Kirk knew Walls, who had been married to Tucker's mother for many years, and saw him use methamphetamine at Tucker's house. Kirk was present once when Stephens cooked methamphetamine at Walls's house.

Tucker testified that he had used methamphetamine for seven or eight years, but learned to cook it sometime during the last two or three years. Tucker said he cooked methamphetamine with Stephens four or five times and indicated that Stephens usually cooked with Colby Perry and Benton Smith. Tucker also testified that he got iodine and pseudoephedrine from Stephens a few times and sometimes used flasks and condensers belonging to Stephens to cook methamphetamine. Tucker, a daily user, gave away or sold methamphetamine to others. When he had some methamphetamine, Tucker would give or sell some to Stephens and Walls. They, in turn, would give or sell methamphetamine to Tucker when they had some.

Perry and Magnum testified that Walls let them cook methamphetamine at his house three times in exchange for a share of what they made. Magnum felt he was being cheated, so he took his iodine to Tucker who, in return, fixed Magnum's car and gave him a quarter ounce of the methamphetamine he produced with it. Magnum said he saw Stephens cook methamphetamine at Tucker's house in August or September 1999. Perry testified that he got iodine from

Tucker and Brooks testified that they had seen Stephens with a firearm on his person and in his car. The government also offered evidence that individuals engaged in making and selling methamphetamine often use firearms to protect themselves. On the date in question, Stephens was engaged in drug trafficking offenses and had the loaded handgun next to him in the car during his flight from police. The evidence, when viewed in the light most favorable to the prosecution, is sufficient to lead a rational trier of fact to conclude that the presence of the firearm was not coincidental but facilitated or had the potential of facilitating the drug trafficking offenses of attempted manufacture and possession of materials used to manufacture methamphetamine.

## C. Downward Departure

The district court refused to grant Stephens a downward departure from the guidelines to account for the disparity between his sentence and the 41-month sentence Tucker received. In urging the court to depart downward, Stephens argued both that Tucker was more culpable than he and that an unjustified disparity resulted from the government's decision not to charge Tucker with possessing a firearm in violation of § 924(c)(1).

The district court may consider disparity in the sentencing of codefendants, but a departure intended to achieve uniformity in the sentencing of codefendants is not appropriate when a basis for the disparity exists. *See United States v. Epley*, 52 F.3d 571, 583 (6th Cir. 1995); *United States v. Rutana*, 932 F.2d 1155, 1159 (6th Cir. 1991); *United States v. Nelson*, 918 F.2d 1268, 1275 (6th Cir. 1990). We may not review the district court's decision not to depart downward from the guidelines unless the denial was based on the district court's erroneous belief that it did not have legal authority to do so. *United States v. Pruitt*, 156 F.3d 638, 650 (6th Cir. 1998); *United States v. Strickland*, 144 F.3d 412, 418 (6th Cir. 1998); *United States v. Byrd*, 53 F.3d 144, 145 (6th Cir. 1995).

presence or involvement cannot be the result of accident or coincidence." *Smith v. United States*, 508 U.S. 223, 238 (1993). The weapon must at least facilitate or have the potential of facilitating the drug trafficking offense. *Id.* (quoting *United States v. Stewart*, 779 F.2d 538, 539 (9th Cir. 1985)). *See also United States v. Warwick*, 167 F.3d 965, 971 (6th Cir. 1999). In making this determination, we look not just at the defendant's specific intentions at the time but also at the "'totality of the circumstances surrounding the commission of the crime: the emboldened sallying forth, the execution of the transaction, the escape, and the likely response to contingencies that might have arisen during the commission of the crime.'" *Warwick*, 167 F.3d at 971 (quoting *United States v. Brown*, 915 F.2d 219, 226 (6th Cir. 1990)).

Although the chase on June 3, 1998, occurred during the period of the conspiracy, Stephens argues that the evidence did not show he was acting in furtherance of the conspiracy on that date. Stephens was nonetheless convicted of attempting to manufacture methamphetamine on that date; a conviction he does not contest. Nor does he challenge his conviction for possessing materials and equipment used to manufacture methamphetamine, which were found along with the handgun in the car.[3] Arguing that he was carrying all of his worldly belongings in the car with him that day, Stephens contends that the presence of the handgun simultaneously with the materials used to manufacture methamphetamine was merely coincidental. Stephens also denies that possession of the weapon emboldened or facilitated the drug offenses because the materials used to manufacture methamphetamine do not require protection.

---

[3] Defendant asserts that the possession of chemicals and equipment used to manufacture methamphetamine is not a "drug trafficking offense." That term, however, is specifically defined in 18 U.S.C. § 924(c)(2) to include "any felony punishable under the Controlled Substances Act (21 U.S.C. § 801 et seq.)." The offenses set forth in 21 U.S.C. § 843(a)(6), as well as those set forth in 21 U.S.C. §§ 841(a)(1) and 846, are drug trafficking offenses for purposes of § 924(c)(1).

Stephens once in exchange for some of the methamphetamine it produced. Another time, Perry got chemicals from Magnum, who said he got them from Walls. Perry estimated that Tucker and Smith cooked about one and five pounds of methamphetamine per week, respectively.

On June 3, 1998, an officer observed Stephens driving a brown Lincoln in excess of the speed limit and knew that his driver's license had been suspended. When the officer attempted to stop Stephens, a high-speed chase ensued and Stephens eluded the officer. The car was found a few minutes later with the door open and the motor still running. Stephens had abandoned the car, which was registered to his mother, after it had hit a tree. Police found a loaded 9-mm. Tanfoglio pistol between the front seats.

In the backseat, police found a police scanner, a power converter, butane and propane canisters, glass pipes, Brillo pads, aluminum foil, a torch head, coffee filters, hosing, a funnel, pseudoephedrine, digital scales, and a piece of paper with "red phosphorous" and a chemical supply company's name written on it. There were also some personal items, including photographs of the house Stephens and his ex-wife had built. Although no methamphetamine was found in the car, Stephens was convicted of committing the following offenses on June 3, 1998; attempting to manufacture methamphetamine (count 5), possession of equipment used in the manufacture of methamphetamine (count 6), and carrying a firearm during and in relation to a drug trafficking offense (count 7).

A second chase occurred on August 3, 1999, as Kirk and Stephens were leaving a motel room where Stephens had cooked methamphetamine the night before. Acting on a tip, police observed Kirk and Stephens loading boxes from a motel room into a red 1987 Nissan sports car. When Kirk and Stephens drove around to the back to put something in the dumpster, the officers tried to block them in with their cars. Stephens and Kirk sped away, eluded police, and abandoned the car. In the car, police found a number of items used in the

manufacture of methamphetamine and coffee filters that bore traces of cocaine base and methamphetamine. Stephens and Kirk had taken luggage and a box from the car, which they were seen dumping into a nearby ditch. From that ditch police retrieved materials that are used to manufacture methamphetamine, including glassware, condensers, acetone, lye, and several jars of liquid. Two of the liquids tested positive for methamphetamine. Stephens was convicted of attempting to manufacture and possessing chemicals and equipment used to manufacture methamphetamine on that date (counts 12 and 13).

On August 10, 1999, Stephens called an investigator with the sheriff's department and arranged to meet with him. Stephens, who said he intended to enter drug rehabilitation, handed over a glass beaker and a bottle containing a liquid he called "meth oil." He said the liquid was fifteen minutes away from being methamphetamine and explained the steps that still needed to be taken to complete the process. Although Stephens also promised to turn over glassware that was in the hands of others, he did not call again. The liquid tested positive for methamphetamine. Stephens was convicted of manufacturing and possessing chemicals and equipment used to manufacture methamphetamine on that date (counts 14 and 15).

On September 29, 1999, several officers went to Tucker's residence looking for Stephens for whom there was an outstanding misdemeanor warrant for driving with a suspended license. Tucker directed the officers to the detached garage, where Stephens was found and arrested. Two glass vials containing powdered methamphetamine were found on his person. One officer detected the odor of what he thought was a methamphetamine laboratory. Walls was stopped as he was moving away from the garage. He was found to have a plastic bag in his pocket that contained a used coffee filter with methamphetamine residue on it. Walls insisted that he needed to use the bathroom, so he was escorted into the house. Kirk, Magnum, and several others were found in the house. Police obtained a search warrant for

day. Police found not only materials and equipment used to manufacture methamphetamine, but also liquids containing methamphetamine and pseudoephedrine. Walls had a used coffee filter with methamphetamine residue on it in his pocket. Also, Red Devil lye and the head to a propane torch were found in the car Walls had parked in Tucker's driveway. There was sufficient evidence to lead a rational trier of fact to conclude that Walls possessed chemicals, products, material, or equipment that could have been used to make methamphetamine that day while knowing, intending, or having reasonable cause to believe it would be used to manufacture methamphetamine. Given his involvement in the conspiracy, a rational trier of fact could also conclude that Walls knowingly participated in the manufacture of methamphetamine at Tucker's house on September 30, 1999.

## 2.    Stephens

Claiming no error relating to his various drug convictions, Stephens challenges only the sufficiency of the evidence to support his conviction for carrying a firearm during and in relation to a drug trafficking offense on June 3, 1998. Stephens concedes, as he must in light of *Muscarello v. United States*, 524 U.S. 125 (1998), that he "carried" the firearm for purposes of § 924(c)(1) by having it with him in the car. *See Hillard v. United States*, 157 F.3d 444, 449 (6th Cir. 1998). Rather, it is the "during and in relation to" requirement that Stephens contests.[2]

Mere possession of a firearm during the course of criminal activity will not support a conviction under § 924(c). *United States v. Layne*, 192 F.3d 556, 571 (6th Cir. 1999). In order to establish the connection, "the firearm must have some purpose or effect with respect to the drug trafficking crime; its

---

[2]Stephens argues and the government agrees that the evidence would not support a conviction under the "use" prong of § 924(c) as defined in *Bailey v. United States*, 516 U.S. 137 (1995). The indictment, however, only charged Stephens with "carrying" a firearm during and in relation to the drug trafficking crimes alleged in counts 1, 5, and 6.

violate the drug laws and that each conspirator knew of, intended to join, and participated in the conspiracy. *United States v. Avery*, 128 F.3d 966, 970 (6th Cir. 1997). "Although the connection between the defendant and the conspiracy need only be slight, an agreement must be shown beyond a reasonable doubt." *Id*. at 971. A tacit or material understanding among the parties to a conspiracy is sufficient to establish the agreement. *United States v. Pearce*, 912 F.2d 159, 161 (6th Cir. 1990). A conspiracy may be inferred from circumstantial evidence which may reasonably be interpreted as participation in a common plan. *United States v. Blakeney*, 942 F.2d 1001, 1010 (6th Cir. 1991).

Ample evidence was offered to establish that a tacit understanding existed between Walls, Stephens, Magnum, Tucker, and others to cooperate with each other in the manufacture of methamphetamine to use, share, and sell during the relevant time period. There was an ongoing pooling of chemicals, supplies, equipment, and methamphetamine depending on what they each had and what was needed. Stephens and Tucker regularly cooked methamphetamine for use primarily by those in the conspiracy. While Walls did not know how to cook methamphetamine, there was evidence that he let Perry, Magnum, and Stephens cook methamphetamine at his house in exchange for a portion of what they produced. Magnum also testified that Walls gave him iodine and red phosphorous on one occasion. In addition, Walls, Stephens, Magnum, and Tucker were all at Tucker's house while methamphetamine was being manufactured on September 29, 1999. The evidence was sufficient to support a finding that the alleged conspiracy existed and that Walls knew of, intended to join, and participated in that conspiracy.

Walls also challenges the sufficiency of the evidence to support his convictions on counts 16 and 17 for manufacturing methamphetamine and possessing chemicals and equipment used to manufacture methamphetamine on September 30, 1999. There was evidence that methamphetamine was being cooked in Tucker's garage that

the premises and seized glass pipes, coffee filters, razor blades, acetone, Coleman fuel, muriatic acid, and liquid stored in glass jars. One liquid contained methamphetamine and another contained pseudoephedrine. In the room used by Stephens and Kirk, police found a broken glass pipe, powdered methamphetamine, digital scales, and a 500-ml. flask. Two handguns were also found in a dresser drawer in Tucker's bedroom. Red Devil lye and a head for a propane torch were found in the vehicle belonging to Walls.

Information gathered at Tucker's residence led police to obtain a search warrant for Walls's residence that same day. Police searched his residence on September 30, 1999, and found a hot plate, camp fuel, muriatic acid, lye, acetone, and jugs containing liquids. Two of the liquids were found to contain methamphetamine. This was the basis for the separate charges against Walls for September 30, 1999, one of which was dismissed by the government before sentencing.

The district court sentenced Walls to concurrent terms of 70 months' imprisonment on counts 1, 16, 17, and 18, to be followed by a period of supervised release. On all counts except the firearm offense, the district court sentenced Stephens to concurrent terms of 105 months' imprisonment. Stephens was also sentenced to a 60-month consecutive term of imprisonment for the firearm offense, to be followed by a period of supervised release. Defendants appealed.

## II.

### A.   Severance

Walls contends that the likelihood of unfairly prejudicial spillover of evidence concerning Stephens mandated severance under Fed. R. Crim. P. 14. There is a preference for joint trial of defendants who are indicted together under Fed. R. Crim. P. 8(b). *Zafiro v. United States*, 506 U.S. 534, 539 (1993). Severance is required "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Id*. The district

court's denial of a motion for severance to cure prejudicial joinder is reviewed for abuse of discretion. *United States v. Lloyd*, 10 F.3d 1197, 1215 (6th Cir. 1993). Because the defendant failed to renew his motion to sever at the close of all the evidence, however, our review is for plain error. *United States v. Kincaide*, 145 F.3d 771, 780 (6th Cir. 1998); *United States v. Anderson*, 89 F.3d 1306, 1312 (6th Cir. 1996).

Emphasizing that he was charged in only five of the twelve counts presented to the jury, Walls argues that the overwhelming proportion of the testimony offered during trial involved criminal conduct not directly related to him. Out of the twelve counts, however, Stephens and Walls were jointly charged with conspiracy to manufacture methamphetamine and with manufacturing and possessing equipment used to manufacture methamphetamine on September 30, 1999 (counts 1, 16, and 17). Testimony concerning these charges would have been admissible against Walls in a separate trial.

Walls complains that the evidence offered against Stephens was prejudicial because it included evidence of his other methamphetamine charges, two high-speed car chases with police, possession of a loaded handgun during one of those chases, and association with young women to whom he provided methamphetamine. While there was strong evidence that Stephens was engaged in manufacturing methamphetamine, the separate charges against Stephens arose from discrete incidents in which Walls was not implicated. Juries are presumed to be capable of following instructions, like those given in this case, regarding the sorting of evidence and the separate consideration of multiple defendants. *Zafiro*, 506 U.S. at 540-41; *United States v. Medina*, 992 F.2d 573, 587 (6th Cir. 1993); *United States v. Moore*, 917 F.2d 215, 222 (6th Cir. 1990). Walls has failed to show specific and compelling prejudice that would mislead and confuse the jury in the absence of a separate trial. *Moore*, 917 F.2d at 221. Even when a defendant is able to show some potential for jury confusion, such confusion must be balanced against society's interest in speedy and efficient trials. *Id*.

We can find neither an abuse of discretion nor plain error in the district court's denial of defendant's motion for severance in this case.

## B.  Sufficiency

On appeal, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). In making this determination, "we refrain from independently judging the credibility of witnesses or weight of the evidence." *United States v. Welch*, 97 F.3d 142, 148 (6th Cir. 1996). Even circumstantial evidence may sustain a conviction so long as the totality of the evidence was substantial enough to establish guilt beyond a reasonable doubt. *United States v. Phibbs*, 999 F.2d 1053, 1064 (6th Cir. 1993).

### 1.  Walls

In challenging the sufficiency of the evidence to support his conviction for conspiracy to manufacture methamphetamine, Walls argues that the evidence established multiple conspiracies and not the common conspiracy charged in the indictment. "If an indictment alleges one conspiracy, but the evidence can be construed as only supporting a finding of multiple conspiracies, a variance results." *United States v. Lee*, 991 F.2d 343, 349 (6th Cir. 1993). A single conspiracy is not converted to multiple conspiracies simply because it can be subdivided, or because there are changes in the individuals involved or the roles that they play in the conspiracy. *United States v. Wilson*, 168 F.3d 916, 924 (6th Cir. 1999); *United States v. Rugiero*, 20 F.3d 1387, 1391-92 (6th Cir. 1994). Even so, a variance in the proofs does not require reversal unless it prejudiced the defendant's substantial rights. *Wilson*, 168 F.3d at 923-24; *Lee*, 991 F.2d at 349.

To sustain a conviction under 21 U.S.C. § 846, the government must prove the existence of an agreement to