**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 05a0392n.06
Filed: May 12, 2005

**No. 04-5391**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| WYNILE WALLS, | ) | DISTRICT OF TENNESSEE |
| | ) | |
| Defendant-Appellant. | ) | |

Before: BOGGS, Chief Judge; ROGERS, Circuit Judge; and SHADUR, District Judge.[1]

PER CURIAM. Defendant-Appellant Wynile Walls (hereinafter Walls) appeals his conviction, after a jury trial, on six counts of possession of stolen mail, altering postal money orders, and making a false, fraudulent, and fictitious material statement to postal inspectors. He contends that the evidence was insufficient to establish his guilt beyond a reasonable doubt. We affirm.

**I**

On December 7, 2000, Terry Ling, a businessman in Memphis, purchased four postal money orders and an Express Mail envelope from a postal clerk named Calvin Walls, the Appellant's brother, at the United States Postal Service Air Mail Center in Memphis. Ling made

---

[1] The Honorable Milton I. Shadur, United States District Judge for the Northern District of Illinois, sitting by designation.

the money orders out to You Jin, a business in New York City. When he had completed filling out the forms and sealed the money orders in the envelope, Calvin Walls was no longer available, and Mr. Ling handed the envelope to another postal clerk. Although the envelope was registered as entering the Postal Service tracking system, it subsequently disappeared.

When the now-cashed money orders were located, the payee's name had been changed on each. One order was made out to and endorsed by Wynile Walls and listed Wynile Walls's driver's license number. The second was made out to and endorsed by Carl Marshall. A Postal Service forensic handwriting expert testified that the payees' names and endorsements on these two money orders were, with qualified certainty, written by Walls.[2] The second money order also had Walls's fingerprint on it. The third money order was made out to Tasha White, and the fourth to Ramona Parker. Walls did not write anything on these two orders.

The last two money orders were cashed by women who worked as dancers at the Club Flamingo, where Walls was a manager. According to the testimony of the women, Walls came to the apartment of one of them, Aundrea Carrick, and asked her to cash a $400 money order. She testified that the money order was already made out to Tasha White and that she simply signed her name on the back. The second dancer, Cicely Thomas, was also at Carrick's apartment at the time. Carrick picked up a $700 money order, which was lying on a coffee table,

---

[2] With regard to the signed endorsements, the forensic expert testified that, "this is not a full identification as we would describe it, there is a slight uncertainty only because of the extent of the exemplars did not demonstrate the speed and execution and it was my opinion that he probably wrote it, however, it is not a full certainty . . . ." However, he further added that it was his "highest level of opinion" that Walls did print the names of the payees on the front of the money orders.

and handed it to Thomas for her to cash. Thomas wrote the name Ramona Parker on the front and signed her own name on the back. Carrick, Thomas, and Walls then went to two different post offices, where first Thomas, then Carrick separately cashed their money orders. Carrick gave $300 back to Walls and kept the $100 he told her she could have for cashing the order. After cashing her money order, Thomas gave the cash to Walls, who gave her back $200 to pay off a debt Carrick owed Thomas.

The defense put on Derek Jackson, formerly a bouncer at the Club Flamingo, who testified that in December 2000, Walls asked him to watch the Club while he took Carrick to cash a money order. Jackson also testified that "Checks and money orders, all that come through the club," as the means by which patrons paid "for their service through the females." Jackson acknowledged that he did not see any money orders at the time.

According to the testimony of a postal inspector, Walls denied knowing Thomas or Carrick, though the inspector did not show him their pictures or identify them to Walls by their respective stage names. The inspector showed Walls the money orders and testified that Walls "adamantly denied that he had ever cashed a money order in his life." With regard to the theft of the money order, the inspector also said that Walls "basically . . . denied the entire thing."

Based on this evidence, the jury convicted Walls of three counts of unlawful possession of a United States Postal Money Order, in violation of 18 U.S.C. § 1708; two counts of falsely altering a money order, in violation of 18 U.S.C. § 500; and one count of making a false, fraudulent, and fictitious material statement to a postal inspector, in violation of 18 U.S.C. § 1001. The judge sentenced Walls to three years' probation and a fine.

**II**

Walls now contends that the jury had insufficient evidence to find him guilty beyond a reasonable doubt. We review a sufficiency of the evidence claim *de novo*, considering "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319 (1979); *United States v. Wood*, 364 F.3d 704, 716 (6th Cir. 2004). The Appellant's burden is very heavy because the reviewing court does not judge the credibility of witnesses or weigh evidence, and it draws all reasonable inferences in the government's favor. *United States v. Walls*, 293 F.3d 959, 967 (6th Cir. 2002); *United States v. Tocco*, 200 F.3d 401, 424 (6th Cir. 2000).

Walls was indicted and convicted for unlawfully possessing the money order on which he was named as payee, the one that he asked Carrick to cash, and the one that Thomas cashed. To sustain a conviction under 18 U.S.C. § 1708 for stealing a piece of mail, the Government must prove (1) that the matter described in the indictment was mail matter, (2) that the mail matter was stolen, (3) that the defendant knew it was stolen, and (3) that defendant possessed the stolen mail matter. The evidence demonstrated beyond a reasonable doubt that the Postal Service money orders had been stolen from the mail. Ling, the original purchaser, bought the money orders. He had a receipt identifying each money order; the Postal Service tracking system had the envelope entering the system and then disappearing; and the money orders later turned up, with different payees' names written in and in the possession of people other than the original intended payee.

A rational juror could also conclude, based on the circumstantial evidence, that Walls knew the money orders were stolen. They were originally made out to You Jin, and they were all placed together in a single envelope. After disappearing from the system, one of the money orders reappeared with Walls's name as payee and endorser. The handwriting was identified as Walls's. Furthermore, as all of the orders had been placed into the mail together, if Walls knew that one of them was stolen, a rational juror could reasonably infer that Walls also knew that the others were stolen. In addition, the jury had sufficient evidence to find that Walls possessed the money orders. His handwriting was identified on one of them. Carrick testified that Walls gave her another money order. And although Thomas testified that Carrick, not Walls, handed her the third money order, she also testified that after she had cashed the money order, she handed the cash over to Walls.

Next, Walls was indicted and convicted of falsely altering the money orders that named himself and Carl Marshall as payees. Under 18 U.S.C. § 500, the government must prove four elements to sustain a conviction of falsely altering a postal money order: (1) that the document was a money order; (2) that it was falsely altered; (3) that the alteration was material; and (4) that the defendant altered the document with intent to defraud. The prosecution produced evidence that Ling bought four money orders and made them out to You Jin. Based on handwriting analysis, the Government demonstrated that Walls replaced You Jin's name with his own name and that of Carl Marshall, enabling him to cash the checks. These changes represented false and material alterations. Finally, the evidence was sufficient for the jury to find that Walls knew the money orders were stolen, so that if he also altered them, he did so with

intent to defraud.

Finally, Walls was indicted and convicted of making a false statement representing that "he had never possessed" the money order on which he had written his own name as payee and endorser. To sustain a conviction under 18 U.S.C. § 1001(a)(2), the Government must prove beyond a reasonable doubt that the defendant (1) made a statement; (2) that the statement was false; (3) that the defendant knew the statement was false; (4) that the false statement was material; and (5) that the statement relates to "any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States."

After waiving his right to remain silent, Walls told the postal inspector that he had never "cashed a money order in his life," and he denied his involvement in the theft, alteration, and cashing of the four money orders under investigation. The inspector's testimony does not state that Walls specifically denied *possessing* the money order. However, the postal inspector testified that he showed Walls each money order and asked him about each one. Coupled with Walls's general denial of involvement in the theft, a rational juror could find that Walls did deny that he possessed the order.

The remaining elements of Section 1001(a)(2) are easily met by the evidence placed before the jury. Walls's handwriting was identified, with a great degree of certainty, on the money order, and his driver's license number was also written on the money order. From this a jury could find that his claim that he did not possess the money order was false and that he knew it was false. The statement was clearly material because it went to the essence of the crime, and the statement concerns a U.S. Postal Money Order, making this a matter within the jurisdiction

of the Executive Branch, and meeting the last prong of the statute.

## III

For the foregoing reasons, we **AFFIRM** Walls's conviction on all counts.