NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 08-2830
_____

UNITED STATES OF AMERICA

v.

KEVIN TAYLOR, also known as Qadir,

Appellant

_____

No. 08-2986
_____

UNITED STATES OF AMERICA

v.

STEVEN GANTT, also known as BOZ,

Appellant

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Nos. 1-06-cr-00699-003 and 1-06-cr-00699-001)
District Judge:  Honorable Robert B. Kugler

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
April 15, 2010

Before:  FISHER and COWEN, *Circuit Judges*, and DITTER,[*] *District Judge*.

(Filed: May 10, 2010)

_____

OPINION OF THE COURT

_____

FISHER, *Circuit Judge*.

Steven Gantt ("Gantt") and Kevin Taylor ("Taylor") brought this consolidated appeal from their convictions and sentences resulting from a series of bank robberies.  For the reasons stated herein, we will affirm.

I.

We write exclusively for the parties, who are familiar with the factual context and legal history of the case.  Therefore, we will only set forth those facts necessary to our analysis.

The convictions at issue arise out of a series of nine bank robberies committed in 2005 and 2006 in New Jersey and Pennsylvania.  Gantt and Walter Johnson were arrested on August 23, 2006, in connection with these robberies.  Walter Johnson confessed his involvement and implicated Gantt and Taylor.  A warrant to arrest Taylor was then issued by a New Jersey state court.

_____

[*]Honorable J. William Ditter, Jr., Senior United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

On September 6, 2006, a federal grand jury issued a two-count indictment against Gantt and Walter Johnson, charging both with (1) Hobbs Act conspiracy in violation of 18 U.S.C. § 1951(a), and (2) the use of a firearm in connection with a May 30, 2006 robbery in violation of 18 U.S.C. § 924(c)(1) and 18 U.S.C. § 2. On November 22, 2006, Walter Johnson pleaded guilty to a two count superceding information pursuant to a cooperating guilty plea agreement. On November 27, 2006, Taylor was arrested, and a week later the grand jury issued a superceding indictment charging Gantt and Taylor with the same two counts contained in the September 6, 2006 indictment.

On June 26, 2007, the grand jury returned a second superseding indictment. The charges against both Gantt and Taylor included one count of conspiracy to commit Hobbs Act robbery in violation of 18 U.S.C. § 1951(a); six counts of armed robbery in violation of 18 U.S.C. §§ 2113(a), 2113(d), and 18 U.S.C. § 2; and six counts of using a firearm in connection with the corresponding bank robberies in violation of 18 U.S.C. § 924(c)(1). Gantt was charged with two additional counts of armed bank robbery and two additional counts of using a firearm in connection with the corresponding bank robberies.

The trial at issue commenced on February 26, 2008, and on March 19, 2008, the jury returned guilty verdicts on all counts.[1] Taylor and Gantt were sentenced to a total of 1,380 and 1,788 months in prison, respectively. The District Court sentenced Appellants'

---

[1] A prior trial had commenced on January 22, 2008, and ended on February 11, 2008, with the declaration of a mistrial after the jury announced it was deadlocked on all counts.

co-conspirator, Walter Johnson, who had pleaded guilty, to a total of 108 months incarceration.

At trial, the District Court, over Gantt's objection, permitted the Government to admit as modus operandi evidence, under Federal Rule of Evidence 404(b), Gantt's participation in a 1998 series of similar robberies. The purpose of this evidence was to establish Gantt's identity as one of the participants in the most current robberies. The Government subsequently presented evidence that a large number of commonalities existed between the 1998 and 2005-2006 robberies.

An additional piece of evidence at issue during trial was a security tape from the day of one of the robberies, July 21, 2006, that showed Walter Johnson along with Jermaine Johnson and Malik Harvey purchasing various items from a Wal-Mart. After investigators viewed this tape, it was misplaced before it could be turned over to and viewed by the Appellants in preparation for trial. The existence, content, and subsequent loss of the video were disclosed to the Appellants by the Government.

Both Gantt and Taylor filed timely notices of appeal as to their convictions and sentences.

## II.

The District Court had jurisdiction over both cases under 18 U.S.C. § 3231. We have jurisdiction over the challenges to the convictions and the sentences pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). We review a challenge to a court's decision to

4

admit evidence of prior crimes for abuse of discretion. *United States v. Hoffecker*, 530 F.3d 137, 189 (3d Cir. 2008). We review *de novo* alleged Due Process violations on the part of the Government for failure to preserve potentially exculpatory evidence. *United States v. Mack*, 229 F.3d 226, 231 (3d Cir. 2000). This Court reviews sentencing decisions for reasonableness, and this "reasonableness review" is done under an abuse of discretion standard. *United States v. Tomko*, 562 F.3d 558, 567 (3d Cir. 2009) (en banc). Finally, we review all arguments not raised in the District Court, including that a prosecutor engaged in vindictive prosecution, for plain error. *United States v. Walls*, 293 F.3d 959, 970 (6th Cir. 2002).

III.

A.      Admission of the Modus Operandi Evidence under Federal Rule of
Evidence 404(b)

Gantt challenges the admission of evidence of his participation in a series of bank robberies in 1998 as evidence of his identity as one of the perpetrators of the bank robberies in this case. The District Court accepted the Government's argument that, under Rule 404(b), the methods used in the 1998 robberies were so similar to the methods used in the 2005-2006 robberies that they established a modus operandi which could help to establish Gantt's identity as one of the participants in the 2005-2006 series of robberies. In coming to this conclusion, the District Court was presented with evidence of similarities between the two series of robberies including the robbers' dress, method of obtaining the bank's money, use of firearms, number of robbers involved in each incident,

and use of stolen getaway cars. The Government presented the District Court with statistical evidence tending to show that a very small number of robberies occurred under the same circumstances and in the exact same fashion as exhibited by the two series of robberies at issue.

Gantt argues that the similarities between the two series of robberies are common to many bank robberies and do not constitute a modus operandi. A court, however, may look at all of the similarities together and determine whether a pattern has been established. *United States v. Carlton*, 534 F.3d 97, 101-02 (2d Cir. 2008). This is precisely what the District Court did in this case and the Court was within its discretion to make the determination that the evidence presented by the Government established a modus operandi under Rule 404(b).

A court must also determine whether, under Federal Rule of Evidence 403, the danger of unfair prejudice in admitting the evidence substantially outweighs its probative value. The District Court weighed the probative effect of the evidence tending to identify Gantt as one of the robbers against the potential for the unfair prejudice from the jury possibly inferring culpability in the 2005-2006 bank robberies because Gantt had been previously involved in criminal activity. The District Court found that there was no bar under Rule 403 to admitting the evidence, and we may only disturb this analysis if it is "irrational or arbitrary." *Diehl v. Blaw-Knox*, 360 F.3d 426, 430 (3d Cir. 2004). There is no indication in the record that the District Court's decision was irrational or arbitrary.

6

B.     Unavailability of the Wal-Mart Videotape

Appellants claim that the security tape showing Walter Johnson, Malik Harvey, and Jermaine Johnson at Wal-Mart on the day of one of the robberies was exculpatory evidence that should have been turned over to them, and the fact that the tape was unavailable was a denial of their Due Process rights.  Appellants argue that the tape tends to show that Malik Harvey and Jermaine Johnson, rather than themselves, conspired with Walter Johnson to commit the robberies.  The Government, however, made Appellants aware that the Wal-Mart tape existed and that Walter Johnson, Malik Harvey, and Jermaine Johnson were in the video, while Appellants were not.

In order for a court to find a deprivation of Due Process, evidence must both "possess an exculpatory value that was apparent before the evidence was destroyed" and also "be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *California v. Trombetta*, 467 U.S. 479, 489 (1984).  In matters involving "potentially exculpatory" evidence, a criminal defendant must "show bad faith on the part of the police" in order to show a denial of Due Process. *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988).  Appellants only argue that the police should have known of the exculpatory nature of the evidence and taken steps to have the evidence preserved.  This simply does not rise to the level of "bad faith."  The investigators conducted a thorough search for the tape and it was not found.  Further, the exculpatory nature of the videotape in this case is dubious at best, but it is clear that the

7

Appellants had obtained comparable evidence since the substance of the videotape was presented to the jury even in its physical absence.

Appellants also argue that under *Brady v. Maryland*, 373 U.S. 83 (1963), the Government engaged in suppression of evidence in violation of their Due Process rights. To establish a violation under *Brady*, Appellants "must show that: (1) evidence was suppressed; (2) the suppressed evidence was favorable to the defense; and (3) the suppressed evidence was material either to guilt or to punishment." *United States v. Pelullo*, 399 F.3d 197, 209 (3d Cir. 2005) (internal citation and quotations omitted). No suppression occurred in this case. The Government was forthright in disclosing the existence of the videotape as well as disclosing its content. The Appellants knew of its existence and ultimately were able to enjoy any potential exculpatory value from its substance because the jury was made aware that Walter Johnson's cohorts on the tape did not include either of the Appellants.

C.   The Disparate Nature of Appellants' Sentences in Comparison to Walter Johnson's Sentence

Appellants further argue that their sentences, in light of the more lenient sentence given to their co-conspirator, were unreasonable. A court may consider the fact that two equally culpable co-defendants would receive disproportionate sentences if the sentencing guidelines are followed, and then hand down a more lenient sentence; but nowhere is it required that a court equalize sentences in circumstances such these. *United States v. Parker*, 462 F.3d 273, 277 (3d Cir. 2006). Further, where a sentencing court hands down

8

a lenient sentence to a cooperating defendant, it is within the discretion of the sentencing court to take into consideration the disparity of the sentences, and then decide whether or not to impose on the non-cooperating co-defendant a more lenient sentence than advised under the guidelines. *Id.* at 277-78. In this case, the District Court did not see fit to sentence Gantt and Taylor leniently, and nothing in the record indicates that this decision was an abuse of the District Court's discretion.

D. Gantt's Claim of Vindictive Prosecution

Finally, we consider Gantt's contention that the Government violated his Due Process rights by engaging in a "vindictive prosecution." Gantt contends that it was a violation of his rights for the Government to add multiple charges in the second superceding indictment after Gantt refused to agree to a plea agreement under the original charges. Since Gantt did not raise this claim before the District Court, we review for plain error.

Gantt relies on *United States v. Goodwin*, 457 U.S. 368 (1982), to show that vindictive action on the part of the prosecutor violates the Constitution. *Goodwin*, however, states plainly that "a prosecutor may file additional charges if an initial expectation that a defendant would plead guilty to lesser charges proves unfounded." *Id.* at 380. Gantt relies wholly on the fact that the Government went back and obtained another indictment that presented the possibility of a much larger sentence in order to show vindictiveness. On this alone, we cannot find that the District Court plainly erred in

failing to find that the government violated Gantt's Due Process rights by increasing the charges against him.

IV.

For all the foregoing reasons, we will affirm the conviction of the Appellants and the sentences handed down by the District Court.