NOT RECOMMENDED FOR FULL TEXT PUBLICATION
File Name: 11a0076n.06

No. 09-4328

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
**Feb 04, 2011**
LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE NORTHERN DISTRICT OF |
| MARWAN OTHMAN EL-HINDI, | ) | OHIO |
| | ) | |
| Defendant-Appellant. | ) | |

**BEFORE: KENNEDY, CLAY, and KETHLEDGE, Circuit Judges.**

**KENNEDY, Circuit Judge.** Following a bench trial, Marwan Othman El-Hindi was found guilty on all counts of a seven-count indictment relating to his misappropriation of funds from an Internal Revenue Service ("IRS") grant to establish a low income tax clinic ("LITC"). On appeal, El-Hindi challenges the sufficiency of the evidence in regard to his conviction for conspiracy. For the reasons that follow, we **AFFIRM**.

**FACTUAL AND PROCEDURAL BACKGROUND**

On February 7, 2007, a federal grand jury returned a seven-count indictment charging El-Hindi and co-defendant Ashraf Zaim with one count of conspiracy, in violation of 18 U.S.C. § 371; one count of theft of government money or property, in violation of 18 U.S.C. § 641; and five counts of wire fraud, in violation of 18 U.S.C. § 1343. Counts 2 through 7 of the indictment also charged both defendants with aiding and abetting, a violation of 18 U.S.C. § 2. A bench trial commenced on November 4, 2008.

According to the IRS, in 2002 the LITC Program provided matching grants for qualifying organizations that represented low-income taxpayers in controversies with the IRS and/or informed individuals for whom English was a second language of their tax rights and responsibilities. The IRS was authorized to award organizations matching grants of up to $100,000 per year. Projects were allowed to have periods of up to three years and funding would be provided by budget periods of one year. Funding for the second and third years of a program would be provided subject to satisfactory performance, compliance with grant terms, and availability of funds. The IRS clearly stated that all grant funds awarded to an LITC were required to be used for the project authorized by the grant, that the granted funds could not be used for costs or expenses that did not support or benefit the program, and that any unexpended grant amounts needed to be returned to the IRS.

In August 2001, Zaim submitted a grant application to the IRS to establish an organization named Educational Social Foundation Services, Inc. ("ESFS") as an LITC. The address provided for ESFS was 26063 W. 12 Mile Road, Southfield, Michigan 48034. According to the application, ESFS was a non-profit, 501(c) organization with the mission to "provide comprehensive educational services to taxpayers; specifically, disadvantaged individuals for whom English is a second language, and low-income individuals residing in the State of Michigan and Northern Ohio" beginning in 2002. In the "Program Plan" portion of the application, the targeted geographic area for ESFS was listed as the metropolitan Detroit area. The application contained information about the proposed LITC and an employer identification number for ESFS listed as 38-3552345, as well as the proposed responsibilities and qualifications of the principal members of the professional staff. The application also included an IRS form listing an employer identification number for ESFS as 38-3552345. The address for ESFS provided on this form was P.O. Box 12074, Detroit, Michigan 48212. Included

2

with the application were copies of several resumes, including those of El-Hindi, Zaim, Mohamed Nasr, and Deborah Powell. El-Hindi's resume listed his address as P.O. Box 12074, Hamtramek, Michigan 48212, the same address as listed for ESFS on the IRS form. At the time Zaim submitted the application, according to his resume, he was the "VP International" of Zaimnet, Inc. in Toledo, Ohio, a multi-national corporation which provided informational technology products and services. His email address was listed as Bary18@hotmail.com. The application also included a budget narrative which explained that Zaimnet, Inc. gave approximately $30,000 in donated machinery and technical expertise to ESFS. The narrative also stated that Zaimnet, Inc. "welcomed ESFS to use its premises in Southfield, Michigan until a suitable location has been found." The application included an "Offer Of Donation" from Zaimnet, Inc., on Zaimnet's letterhead, detailing temporary in-kind donations to ESFS from Zaimnet, Inc. The letter was purportedly signed by Barry Masri, the CEO and Pledge Officer. Finally, on the LITC Application Information Sheet, El-Hindi was listed as ESFS's treasurer and Zaim was listed as Executive Director. On this form, Zaim's email address was listed as Ashraf@Zaimnet.com.

Susan Gilbert, who at the time was employed by the IRS as an analyst in the LITC program, was responsible for reviewing Zaim's application to establish ESFS as an LITC. At trial, Gilbert testified about ESFS's application. Because of ESFS's lack of experience in the tax clinic field and ambitious goals, the IRS awarded ESFS a $40,000 grant—an amount approximately matching the alleged donations made by Zaimnet, Inc.—instead of the $100,000 requested. This sum was paid to ESFS between January and June 2002 via direct deposit to an account at National City Bank with the last digits 0684 (the "0684 account"). The address listed for ESFS on the direct deposit form was P.O. Box 12074, Detroit, Michigan 48212, the same address that El-Hindi listed as his address on

3

his resume and the same address listed on the IRS form listing an employer identification number for ESFS.

Witnesses presented at trial offered detailed evidence of inconsistencies in the operations of ESFS.

Gilbert testified about her subsequent relationship with ESFS and its lack of compliance with the grant reporting requirements. She testified that ESFS neither filed required interim reports nor quarterly reports. She stated that when she attempted to contact ESFS, it provided her with different mailing addresses and telephone and facsimile numbers. Additionally, Gilbert testified about communications she had with El-Hindi and Powell related to the grant received by ESFS. According to Gilbert, El-Hindi and Powell contacted her office on July 29, 2002 by telephone to express concerns over misappropriation of funds by Zaim and to ask for some guidance on addressing the matter. Shortly thereafter, El-Hindi sent Gilbert a facsimile explaining that Zaim had been terminated as executive director of ESFS. The address for ESFS was then listed as 660 Berry Street, Toledo, Ohio 43605 on the facsimile. On August 16, 2002, Gilbert received an email from Zaim telling her that he was resigning from ESFS and was turning over his responsibilities to El-Hindi. After Gilbert assigned an investigator to the matter, El-Hindi contacted her to tell her the entire matter was of no import and that he and Zaim had worked things out.

Special Agent Laura Pearson of the FBI testified about an analysis she performed of two bank accounts that El-Hindi and Zaim utilized in connection with ESFS. She testified that El-Hindi opened one account, the 0684 account, on January 18, 2002 for ESFS at National City Bank. For this account, the address listed was P.O. Box 12074, Detroit, Michigan from the time it was opened until May 31, 2002. Then the address switched to 660 Berry Street, Toledo, Ohio 43605 for

4

statements from June 1, 2002 to July 31, 2002. The account listed a tax identification number of 38-3552345 and was closed on August 5, 2002. These addresses corresponded to the two addresses listed by El-Hindi and to the tax identification number submitted with ESFS's application. El-Hindi and Zaim opened a second account on February 20, 2002 for ESFS with the last digits 4805 (the "4805 account"). This account listed the same P.O. Box 12074, Detroit, Michigan 48212 address from the time it was opened until May 31, 2002. At that point, the address changed to 660 Berry Street, Toledo, Ohio 43605. The account appeared to be closed on August 30, 2002. The account listed the same tax identification number as the 0604 account. Zaim was removed as a signatory for the second account on June 19, 2002. Pearson testified about the number and amount of transfers of funds from the El-Hindi account into the account controlled by both El-Hindi and Zaim. In total, she testified that the withdrawals from both accounts totaled $40,000, the same sum as the LITC grant from the IRS.

Special Agent Charles Holloway of the FBI testified at trial about an interview he conducted of El-Hindi in 2006. Holloway testified that the interview included questions about ESFS and that El-Hindi told him that it was an organization that he operated with Zaim. El-Hindi indicated that ESFS was incorporated using his mother's name, but without her knowledge. He also told Holloway the purpose of the organization and that it was funded by a grant from the IRS. El-Hindi told Holloway that ESFS was located in Southfield, Michigan, but could not provide a specific street address. El-Hindi told Holloway that he had never actually been to ESFS's facility. He also could not provide Holloway with a copy of his client referral list.

Several witnesses discussed the work of other LITCs operating in Southeast Michigan. These witnesses testified that they never saw any promotional materials from ESFS. Some did testify to

meeting some representatives from ESFS at a conference, but none could identify who was there from the LITC.[1]

Mohammed Mattan testified that he owned Manera Travel, a travel agency in Michigan. Mattan testified that for roughly a year, until January 2002, he operated an office of his travel agency at 26063 12 Mile Road in Southfield, Michigan. This was the same address that ESFS listed as its address on its LITC application to the IRS. Mattan testified that he knew El-Hindi and Zaim and that Zaim had provided some information technology services to his travel agency. He further testified that no tax clinics were ever held at his Southfield business, nor was ESFS ever headquartered there. However, at one point a letter from the U. S. Treasury Department was sent to Zaim at Mattan's Southfield location. Subsequently, Mattan asked Zaim to not use the address for anything again. Stipulated testimony from Bo Hyun Kang, the owner of a strip mall in Southfield, Michigan where ESFS claimed to hold tax clinics in 2002, supported Mattan's testimony that ESFS never occupied or used that space. Additionally, Mattan testified that he received a check from Zaim on or about March 18, 2002 in the amount of $2,400 drawn on the 4805 account jointly operated by Zaim and El-Hindi for ESFS. The payment was reimbursement for a loan that Mattan had provided Zaim for a trip to Jordan – where Zaim's fiancee lived—not for any services related to ESFS.

Samir Shilbayeh testified concerning a check issued to him from the 0684 account exclusively controlled by El-Hindi. He testified that he never did any work for ESFS, nor did he provide any marketing or advertising services for the organization; rather, the check was to repay El-Hindi's personal debt to him.

---

[1]Gilbert testified about a conference each LITC applicant was required to attend in order to receive training about the reporting duties and obligations of a grantee, as well as to be given an opportunity to network with other area LITCs in order to deliver consistent assistance in a given geographic area.

Nadia El-Hindi, the defendant-appellant's ex-wife, testified that in 2002, she, her then-husband, and their children lived on 660 Berry Street in Toledo, Ohio. She testified that she had never heard of ESFS, nor had she ever done any work for the organization for which she received payment. When presented with a check made payable to her drawn on the 0684 account controlled by her ex-husband for $1,000—purportedly for Muslim women outreach—she testified that she had never seen the check and the endorsement on the check was not her signature.

At trial, after the government rested, the defense moved for an acquittal based on an insufficiency of evidence. The parties engaged in lengthy argument and the district court denied the Rule 29 motion for judgment of acquittal. The defense declined to present any witnesses and, following closing arguments, the district court found El-Hindi guilty on all counts and stated that the government met its burden of proof in part by demonstrating that the flow of money into and between the two accounts clearly showed El-Hindi's knowing and willing participation in the conspiracy to defraud the IRS. El-Hindi was sentenced to eighteen months incarceration and three years of supervised release to be served concurrently with a 120-month sentence he received in another case.

El-Hindi timely appealed.

**ANALYSIS**

El-Hindi's sole argument on appeal is that the evidence at trial was insufficient to convict him of conspiracy. He claims that the government failed to offer evidence of an agreement between him and Zaim to commit any malfeasance through misappropriation of LITC funds.

7

We review *de novo* the district court's determination that the evidence was sufficient to sustain a conviction. *United States v. Gunter*, 551 F.3d 472, 482 (6th Cir. 2009). Our review procedure is well established:

> When considering a challenge to the sufficiency of evidence to sustain a conviction on direct appeal, the relevant question is whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The appellate court must view all evidence and resolve all reasonable inferences in favor of the government. *Id*; *see also United States v. Searan*, 259 F.3d 434, 441 (6th Cir. 2001). Because the issue is one of legal sufficiency, the court neither "independently weighs the evidence, nor judges the credibility of witnesses who testified at trial." *United States v. Talley*, 164 F.3d 989, 996 (6th Cir. 1999). An appellate court cannot substitute its judgment for that of the jury. *United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir. 1993). Finally, it must be remembered that "circumstantial evidence alone can sustain a guilty verdict and . . . [such] evidence need *not* remove every reasonable hypothesis except that of guilt." *United States v. Stone*, 748 F.2d 361, 362 (6th Cir. 1984). This standard is a great obstacle to overcome, *United States v. Winkle*, 477 F.3d 407, 413 (6th Cir. 2007), and presents the appellant in a criminal case with a very heavy burden. *United States v. Jackson*, 473 F.3d 660, 669 (6th Cir. 2007).

*United States v. Hughes*, 505 F.3d 578, 592 (6th Cir. 2007).

Under 18 U.S.C. § 371, it is illegal for "two or more persons [to] conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose." "To prove conspiracy, the government must establish (1) the existence of an agreement to violate the law; (2) knowledge and intent to join the conspiracy; and (3) an overt act constituting actual participation in the conspiracy." *Hughes*, 505 F.3d at 593. "A tacit or material understanding among the parties to a conspiracy is sufficient to establish the agreement[, and a] conspiracy may be inferred from circumstantial evidence which may reasonably be interpreted as participation in a common plan." *United States v. Walls*, 293 F.3d 959, 967 (6th Cir. 2002) (internal citations omitted). The government need not establish proof of a formal agreement,

8

"because acts done with a common purpose can establish an implicit agreement." *United States v. Milligan*, 17 F.3d 177, 183 (6th Cir. 1994). "Once the existence of a conspiracy is established, slight evidence is sufficient to implicate a defendant." *Id*. (citations omitted). However, a defendant "must know the purpose of the conspiracy." *Id*.

The three elements of a conspiracy charge were established at trial. El-Hindi told Holloway that he created ESFS with Zaim. Though Zaim submitted the ESFS LITC application to the IRS, it is not necessary that El-Hindi "be an active participant in every phase of the conspiracy, so long as he [was] a party to the general conspiratorial agreement." *United States v. Hodges*, 935 F.2d 766, 773 (6th Cir. 1991). The address for ESFS changed repeatedly; at various times, Zaim and El-Hindi listed ESFS's address as the address of a company at which Zaim worked, a post office box controlled by El-Hindi, El-Hindi's home address in Toledo, Ohio (even though ESFS was purported to perform tax services in Southfield, Michigan), and the address of an entirely unrelated travel agency in Southfield, Michigan. Other people involved in LITCs in Southeast Michigan testified that they never encountered anyone from ESFS performing services to the community. Moreover, both El-Hindi and Zaim engaged in a pattern of paying personal debts from ESFS bank accounts. *See United States v. Martinez*, 430 F.3d 317, 334 (6th Cir. 2005) ("Knowledge and participation can be inferred from the defendant's conduct.") Quite simply, any reasonable factfinder could conclude that El-Hindi and Zaim jointly established ESFS without any intention of operating a tax clinic and instead created the organization to misappropriate the funds—a plan they formulated together. El-Hindi's theory that he and Zaim sought to establish ESFS as an LITC and then independently decided to loot the organization without even attempting to comply with the organization's mission as explained to the IRS is not credible.

9

Therefore, we conclude that "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319.

**CONCLUSION**

For the reasons set forth above, we **AFFIRM**.